UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO:_____

SLADJANA PERISIC, on behalf of
herself and others similarly situated,

    Plaintiff,

vs.

ASHLEY FURNITURE INDUSTRIES, INC.,
a Wisconsin corporation,

    Defendant.
_____/

**CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY,
AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

    Plaintiff, SLADJANA PERISIC, on behalf of herself and others similarly situated, sues Defendant, ASHLEY FURNITURE INDUSTRIES, INC., pursuant to Rule 23 of the Federal Rules of Civil Procedure, and alleges as follows:

**NATURE OF THE ACTION**

    1.    Plaintiff brings this proposed class action on behalf of all persons who purchased furniture with DuraBlend® upholstery from Defendant in Florida (the "Class").

    2.    Defendant falsely, deceptively or misleadingly promoted, marketed, advertised, and sold furniture with DuraBlend® to Plaintiff and Class members as a high-quality, durable leather product. In fact, furniture with DuraBlend® is of low quality, failed to hold up to normal wear and tear, and began to peel or disintegrate within a short period of time. As a result, Plaintiff and Class members have suffered damages.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which a member of the Class and Defendant are citizens of different states.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391, because Defendant does business throughout this district and a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this district. At all relevant times, Defendant was and is in the business of marketing and selling furniture with DuraBlend® upholstery throughout this judicial district and Florida. Plaintiff and Class members purchased furniture with DuraBlend® upholstery within this judicial district.

## PARTIES

5. Plaintiff Sladjana Perisic is a citizen of Florida, who resides in St. Petersburg, Florida.

6. Defendant Ashley Furniture Industries, Inc., ("Ashley Furniture" or "Ashley") is a Wisconsin corporation with its principal place of business in Wisconsin. Ashley Furniture is registered to do business in the State of Florida.

## GENERAL ALLEGATIONS

7. Ashley has at all relevant times been engaged in the manufacture and sale of residential furniture. Established in 1945, Ashley holds itself out as the largest furniture manufacturer and retailer in the world, with over 500 retail outlets in 123 countries, including the United States and Canada.

8. In or about April of 2008, Ashley began incorporating an upholstery product into some of its furniture, including sofas, loveseats, sectionals, and ottomans, which it marketed as "blended leather upholstery" under the trade name DuraBlend®.

9. "Blended leather" is synonymous with "bonded leather," a man-made material that incorporates leather scraps and fiber and mimics the appearance of leather. According to ConsumerAffairs.com,

> Bonded leather -- sometimes called "reconstituted" leather or just plain "vinyl" -- is not the whole skin of an animal, but left-over pieces of hide blended together to form a seamless piece of leather material.
>
> Genuine leather is made from entire pieces of animal hide and costs much more than items made with the bonded material. It's hard to tell the difference between the two, as once an item is made with bonded leather the appearance and smell are nearly identical.
>
> However, genuine leather typically feels a bit harder to the touch, and if used for sofas, its cushions tend to have a little less give than a bonded leather cushion.
>
> Manufacturers will also use many types of coats and permanent polishes to make bonded leather appear to be the real deal.
> *     *     *
> Many are sadly surprised when they realize the true difference between bonded and genuine leather is its durability, and plenty of retailers leave this important detail out just to close the sale.

*Bonded Leather Sofas vs. Genuine Leatther – What's the Difference?*, Consumer Affairs (Aug. 15, 2012), https://www.consumeraffairs.com/news04/2012/08/bonded-leather-sofas-vs-genuine-leather-whats-the-difference.html (last visited August 1, 2016).

10. At all relevant times, Ashley marketed and sold the DuraBlend® upholstery, which to a reasonable consumer had the appearance of leather and therefore led him/her to reasonably believe it consisted of leather and was of similar quality, strength, or durability as leather. Ashley further marketed the DuraBlend® upholstery as "blended leather," using various monikers such as "Durable", as well as the word "LEATHER" in its own right, further

supporting the reasonableness of the reasonable consumer's belief that the DuraBlend® upholstery consisted of leather and was of similar quality, strength, or durability as leather.

11. As a result, Plaintiffs and the other members of the Class were deceived into purchasing furniture from Ashley with upholstery that, contrary to their reasonable beliefs and expectations, in fact did not consist of leather or was not of similar quality, strength, or durability as leather, instead being of such inferior quality, strength, or durability as to not hold up to normal wear and tear and begin to peel or disintegrate within a short period of time.

## TOLLING OF STATUTES OF LIMITATION

12. Any and all applicable statutes of limitation have been tolled by the fact that Plaintiffs and the other members of the Class were deceived into purchasing furniture from Ashley with upholstery that, contrary to their reasonable beliefs and expectations, in fact did not consist of leather or was not of similar quality, strength, or durability as leather. Plaintiffs and the other members of the Class could not reasonably have discovered this fact until the DuraBlend® upholstery began to peel or disintegrate, as described herein. Any and all statutes of limitation otherwise applicable have therefore been tolled by operation of the discovery rule with respect to all claims alleged herein on behalf of Plaintiffs and the other members of the Class.

13. Based on Defendants' deception of Plaintiffs and the other members of the class, as described herein, Defendants are further estopped from relying on any statutes of limitation in defense of this action.

## PLAINTIFF'S INDIVIDUAL ALLEGATIONS

14. On or about August 11, 2013, Plaintiff purchased from Defendant, at a retail store doing business as "Ashley Furniture HomeStore," located in Pinellas Park, Florida, a sofa, a

loveseat, and a recliner, each having DuraBlend® upholstery, for approximately $1,700 (collectively, the "Furniture").

15. Plaintiff purchased the Furniture based on Defendant's representations that the DuraBlend® upholstery was made of a "synthetic leather" designed to make the upholstery durable. Indeed, Defendant represented to Plaintiff that the Furniture was "as durable as leather." However, Defendant sold the Furniture to Plaintiff without disclosing to her the percentage of leather scraps or fibers, if any, or the percentage of non-leather substances contained in it. Further, when Plaintiff purchased the furniture, she did not see, nor was she presented with, any hang tags or disclosures regarding the DuraBlend upholstery. Additionally, Defendant did not disclose to Plaintiff that the Furniture was of such nature and quality that it would not hold up to normal wear and tear and that it would begin to peel or disintegrate within a short period of time.

16. Plaintiff has continuously owned the Furniture since she bought it and has continuously kept it in her living room for her and her family's normal course of use. In or about early 2016, Plaintiff discovered that the DuraBlend® upholstery on the Furniture was bubbling and peeling, causing pieces and particles of the top "leather"-like layer of all of the sofa cushions and arm rests and the recliner arm rests to come off and exposing the underlying material, which was coarse in texture and off-white in color. The pictures attached hereto as **Exhibit A** show the Furniture in this state.

17. On or about April 2016, Plaintiff made a claim with Guardsman, a company with which she purchased a furniture protection plan. Guardsman informed Plaintiff that the damage to the Furniture (described in the paragraph above) is not covered under the terms of the protection plan because it was deemed a manufacturing defect.

18.     Plaintiff paid a premium for the Furniture over the price of other similar products because she believed it was a product that was as durable as leather.

19.     Had she known that DuraBlend® upholstery would not hold up to normal wear and tear and that it would begin to peel or disintegrate within a short period of time, she would not have purchased it or she would only have been willing to pay a significantly lower purchase price.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action on behalf of herself and all others similarly situated, as members of the proposed Class, under Rule 23 of the Federal Rules of Civil Procedure. The requirements of Rule 23(a) and (b)(3) are each met with respect to the Class defined below.

21.     Plaintiff seeks to represent the following Class:

**All persons who purchased furniture with DuraBlend® upholstery from Defendant in the State of Florida.**

22.     The Class excludes: (1) Defendant, any entity in which Defendant has a controlling interest, and of its legal representatives, officers, directors, employees, assigns, and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (3) any juror assigned to this action; (4) Class Counsel; (5) any persons who purchased furniture with DuraBlend® upholstery for resale or distribution as opposed to use and consumption; and (6) claims for personal injury, wrongful death, and/or emotional distress.

23.     **Numerosity**.  Members of the Class are so numerous that individual joinder of all members is impracticable.  Upon information and belief, thousands of persons purchased furniture with DuraBlend® upholstery in Florida during the relevant time period.

24. **Existence of Common Questions of Law and Fact.**  Common questions of law and fact exist as to all members of the Class and the Sub-Class.  These common legal and factual questions include:

   a. Whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, and sale of furniture with DuraBlend® upholstery;

   b. Whether Defendant's acts and practices in connection with the promotion, marketing, advertising, and sale of furniture with DuraBlend® upholstery would deceive or mislead an objective, reasonable person;

   c. Whether Defendant breached its implied warranties;

   d. Whether Defendant has been unjustly enriched from the sale of furniture with DuraBlend® upholstery; and

   e. Whether Plaintiff and Class members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages, and whether any other relief should be provided.

25. **Typicality.**  Plaintiff's claims are typical of the claims of the Class, because Plaintiff and all members of the Class purchased furniture with DuraBlend® upholstery based on the same false, deceptive or misleading claims or omissions.  Plaintiff and all members of the Class therefore paid more for furniture with DuraBlend® upholstery or purchased furniture with DuraBlend® upholstery that they otherwise would not have.

26. **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff's interests do not conflict with the interests of the members of the Class.  Further, Plaintiff has retained counsel who are competent and experienced in complex class action

litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected.

27. **Rule 23(b)(3) Predominance and Superiority.** Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to all other available means for fairly and efficiently adjudicating the controversy. In this regard, the Class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against a corporation as large as Defendant compared to the amount of individual damages. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties.

28. **Rule 23(b)(2) Certification.** Certification is also appropriate under Rule 23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Ashley knowingly, affirmatively, and actively concealed the true nature, quality, or durability of the DuraBlend® upholstery from Plaintiff and the other members of the Class.

## CAUSES OF ACTION

### COUNT I

**(Violation of Florida's Deceptive and Unfair Trade Practices Act,
Fla. Stat. § 501.201, *et seq*.)**

29. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 28 of the Complaint as if fully set forth herein.

30. Defendant's business acts and practices alleged herein constitute unfair and/or deceptive methods, acts, or practices under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA").

31. At all relevant times, Plaintiff (and members of the Class) were "consumers" within the meaning of the FDUTPA, Fla. Stat. § 501.203(7).

32. Defendant's conduct occurred in the conduct of "trade and commerce" within the meaning of the FDUTPA, Fla. Stat. § 501.203(8).

33. Defendant's practices described above violate the FDUTPA for one or more of the following reasons:

   a. Defendant represented that furniture with DuraBlend® upholstery Defendant sold to Plaintiff and other members of the Class (the "Class Furniture") has characteristics that it does not have;

   b. Defendant represented that furniture with DuraBlend® upholstery Defendant sold to Plaintiff and other members of the Class (the "Class Furniture") was of a particular standard, quality, or grade, when in fact the Class Furniture was of lesser standard, quality, and grade;

   c. Defendant provided, disseminated, marketed, advertised or otherwise distributed false, deceptive or misleading information about true nature, quality, or durability of the DuraBlend® upholstery; and

   d. Defendant failed to disclose material information or made material misrepresentations about DuraBlend® upholstery in connection with its promotion, marketing, advertising, and sale of that product.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, FL 33134 - Telephone (305) 476-7400/Facsimile (305) 476-7444

34. An objective, reasonable person would have been deceived by Defendant's representations about DuraBlend® upholstery.

35. Defendant's acts, omissions, and practices proximately caused Plaintiff and other members of the Class to suffer actual damages in the form of monetary loss because they paid a premium for a purportedly durable, blended leather product that is less valuable or entirely valueless as a result of its true characteristics. As a result, they are entitled to recover actual damages and attorney's fees and costs of the suit, as well any other appropriate relief.

36. Additionally, injunctive and declaratory relief, including an order that Defendant immediately cease and desist its unfair and deceptive acts and practices, is available and appropriate under Florida Statutes § 501.211.

### COUNT II

#### (FRAUDULENT MISREPRESENTATION)

37. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 28 of the Complaint as if fully set forth herein.

38. Defendant marketed the DuraBlend® upholstery as a durable blended or bonded leather product.

39. Defendant knew at all material times the true nature of the DuraBlend® upholstery in the Class Furniture and that it in fact did not consist of leather and was not of similar quality, strength, and durability as leather, instead being of such inferior quality, strength, and durability as to not hold up to normal wear and tear and begin to peel or disintegrate within a short period of time.

40. These facts were not known or reasonably known to Plaintiff and Class members.

41. Defendant knowingly and intentionally marketed and sold the DuraBlend® upholstery, which to a reasonable consumer had the appearance of leather and therefore led him/her to reasonably believe it consisted of leather and was of similar quality, strength, and durability as leather. Defendant further marketed the DuraBlend® upholstery as "blended leather," using various monikers such as "Durable", as well as the word "LEATHER" in its own right, further supporting the reasonableness of the reasonable consumer's belief that the DuraBlend® upholstery consisted of leather and was of similar quality, strength, and durability as leather, when in fact it was not, which was known to Defendants.

42. As a result, Plaintiffs and the other members of the Class were deceived into purchasing furniture from Ashley with upholstery that, contrary to their reasonable, justifiable beliefs and expectations, in fact did not consist of leather or was not of similar quality, strength, and durability as leather, instead being of such inferior quality, strength, and durability as to not hold up to normal wear and tear and begin to peel or disintegrate within a short period of time.

43. Defendant had a duty to disclose the above known material facts because Defendant knew that these material facts were unknown to Plaintiff and Class members, because Defendant was in a superior position of knowledge with regard to the Class Furniture and the true nature, quality, or durability of the DuraBlend® upholstery, and because Defendant chose to make certain representations (including suggesting that the upholstery was indeed composed of "leather" and was "durable") that presented only a part of the true story and misled Plaintiff and Class members about the Class Furniture.

44. Plaintiff and Class members justifiably relied upon the completeness and veracity of Defendant's representations and would not have purchased the Class Furniture had they known that the DuraBlend® upholstery in fact did not consist of leather or was not of similar

quality, strength, and durability as leather, instead being of such inferior quality, strength, and durability as to not hold up to normal wear and tear and begin to peel or disintegrate within a short period of time.

45. Defendant intended consumers, including Plaintiff and Class members to purchase Class Furniture based on Defendant's misrepresentations.

46. Defendant's misrepresentations as alleged and described herein have caused damage to Plaintiffs and the other members of the Class in an amount to be shown at trial.

47. Defendant acted maliciously, wantonly, oppressively, deliberately, and with the intent to defraud Plaintiff and Class members. Defendant acted with reckless disregard of the rights of Plaintiff and Class members. Therefore, Defendant's conduct rises to a level that warrants the award of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT III

**(Unjust Enrichment)**

48. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 28 of the Complaint as if fully set forth herein.

49. Plaintiff and Class members conferred a benefit on Defendant by paying more for Class Furniture or purchasing Class Furniture that they otherwise would not have absent Defendant's misrepresentations about DuraBlend® upholstery, and Defendant was aware of the benefit conferred and voluntarily accepted and retained that benefit.

50. It would be inequitable for Defendant to retain the ill-gotten benefits it received from Plaintiff and Class members because the product Plaintiff and Class members received was not what Defendant purported it to be.

51. As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and Class members have suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, respectfully requests judgment against Defendant:

A. Certifying the Class and appointing Plaintiff and her counsel to represent the Class;

B. Declaring that Defendant's claims or omissions about the nature, quality, or durability of the DuraBlend® upholstery are false, deceptive or misleading;

C. Ordering Defendant to promptly conform its promotion, marketing, advertising, and sale of furniture with DuraBlend® upholstery to the requirements under law;

D. Awarding actual, incidental, statutory, or punitive damages;

E. Awarding pre-judgment and post-judgment interest;

F. Awarding attorney's fees and costs pursuant to Florida Statute §§ 501.2105 and 501.211; and

G. Awarding such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

                                          **COLSON HICKS EIDSON, P.A.**
                                          255 Alhambra Circle, Penthouse
                                          Coral Gables, Florida 33134
                                          Telephone: (305) 476.7400
                                          Facsimile: (305) 476.7444

                                       By:  s/ Julie Braman Kane
                                            Julie Braman Kane
                                            Florida Bar No. 980277
                                            julie@colson.com
                                            (*Lead Trial Counsel*)
                                            Stephanie A. Casey
                                            Florida Bar No. 97483
                                            scasey@colson.com

                                            ***Attorneys for Plaintiff***

Of Counsel:

Mike Arias, Esq.
Mikael H. Stahle
**ARIAS SANGUINETTI STAHLE
& TORRIJOS LLP**
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045
Telephone: (310) 844-9696
Facsimile: (310) 861-0168
mike@asstlawyers.com
mikael@asstlawyers.com