UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SLADJANA PERISIC, on behalf of
herself and others similarly situated,

        Plaintiff,

v.

                                        Case No. 8:16-cv-3255-T-17MAP

ASHLEY FURNITURE INDUSTRIES, INC.,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

      Ashley Furniture Industries (AFI) manufactures a fabric called DuraBlend® for covering sofas, chairs, and the like. Considered a synthetic leather in the industry, it's comprised mostly of polyurethane, some poly cotton, and a small amount of pulverized or ground-up leather. No discerning purchaser would be deceived about all this because AFI affixes a decking label to each upholstered piece explaining as much. And while the fabric may resemble leather to some consumers (to others it might not), it's attractive cost will not confuse anyone who has priced a comparable piece of leather furniture. Almost five years ago, the Plaintiff, Sladjana Perisic, purchased a DuraBlend® covered sofa, love seat, and recliner at bargains that she could never have confused with like leather items. She claims AFI's sales representative somehow misled her to believe that the fabric would wear as well as leather nonetheless. And when it didn't, she filed this action under Florida's Deceptive Unfair Trade Practice Act (FDUTPA) and for unjust enrichment. Before me now is her motion for class certification – for all those like her who purchased DuraBlend® products from AFI since November 30, 2012. *See* doc. 83. Because she cannot satisfy

Rule 23's prerequisites, I recommend her motion be denied.[1]

    *A. Background*

Synthetic leather, whether for shoes, upholstery, handbags, or clothing, has been around for decades. Eventually, the Federal Trade Commission (FTC) published guides for select leather and imitation leather products. *Guides for Select Leather and Imitation Leather Products*, 16 C.F.R. Part 24. Admittedly, these guides do not apply to the furniture industry, but they do serve as a models to such manufacturers for avoiding consumer deception. AFI says it abides by the FTC's promulgations. It discloses that DuraBlend® "is not leather," or it discloses "the percentage of leather fibers and the percentage of non-leather substances contained in the material" in a number of ways to the public. Doc. 48-2, ex. M (Ross Declar.), sub-ex.10 at 34629 (Guidelines for Select Leather and Imitation Leather Products, 16 C.F.R. Part 24). Various informational items adorn the furniture: a hangtag is attached to each piece of DuraBlend® furniture (typically on an armrest); a label is affixed to the deck of the furniture; law labels disclose the outer covering of the furniture. All these say the leather content is 17%. The hangtag and the decking label add more detail about the product's composition – 57% polyurethane and 26% poly cotton. AFI's website similarly informs customers, and AFI's training materials likewise emphasize, that DuraBlend® is comprised of ground or pulverized leather (in keeping with the information appearing on the decking label).

In mid-August 2013, the Plaintiff visited an AFI HomeStore in Pinellas Park, Florida looking for leather furniture.[2] Whether the Plaintiff had actually priced leather before the sales representative

---

    [1] The district judge referred this matter to me for a report and recommendation. 28 U.S.C. § 636(b); Local Rule 6.01(a).

    [2] AFI claims it is the world's largest furniture manufacturer with a network of over 6,000 retailers with 20,000 store fronts in 123 countries either subsidiaries or licensees. AFI

steered her toward a DuraBlend® product in the living room section of the store is unclear. But what is clear is that the living room's look, its price, and the representative's pitch about DuraBlend® won the Plaintiff over. AFI's sales woman called the fabric "pleather" – a mix of leather and synthetic material– and told the Plaintiff that she had personal experience with this fabric because she had it in her home. It had proved durable for her, particularly as a cat owner. That must have struck a chord with the Plaintiff, an aficionado of cats who owns five of them, and whose family of six includes two young children. The Plaintiff bought a 14-piece package and added a recliner: the price for all 15 pieces with taxes and delivery – $1,713.04. The love seat ($217), the sofa ($239), and the recliner ($360) were all covered in DuraBlend®.

No one remembers now whether these DuraBlend® pieces had hangtags or not. If they did, all undoubtedly said the piece was "Durable." But the use of that term begs the question: Durable as compared to what? All three pieces had decking labels informing the Plaintiff about the fabric's fusion of materials: "DuraBlend® blended leather is a material that contains ground, pulverized, shredded, reconstituted or bonded leather and is not wholly the hide of an animal and should not be represented as being 100% leather." Whether the Plaintiff took critical notice of this when she purchased the items is unknown. In any event, more than two years later, in late 2015 or early 2016, the recliner's fabric began blistering. Then the same happened to the love seat and the sofa. The Plaintiff claims the damage is now to the point that all three items are unusable (presumably from an aesthetic viewpoint). AFI counters that she has rebuffed its overtures to remedy the problems and that she has instead filed this action (whether the Plaintiff is satisfied with AFI's remedies is perhaps

---

HomeStore is a wholly-owned subsidiary of AFI. *See* doc. 56 (The Plaintiff's additional undisputed facts) at ¶42.

a different matter).

### B. Discussion

At the outset, it is important to note what this case is not about. The Plaintiff, neither for herself nor for her described class, is not suing AFI for breach of DuraBlend®'s warranty. Nor is she asserting the product is inherently defective. Her singular focus is on AFI's purported deception about the fabric's durability. To make out an actionable claim under FDUTPA for that, which is what she charges, she must prove (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. *Dolphin LLC v. WCI Cmty., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013); *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. 2nd DCA. 2006). An unfair trade practice is one that is likely to deceive a consumer acting reasonably in the same circumstances. *Carriuolo v. Gen. Motors Co.,* 823 F.3d 977, 983–84 (11th Cir. 2016) (applying Florida law). The test is an objective one – she need not show actual reliance on the representation or omission at issue. *Id.* The Plaintiff's unjust enrichment claim is but a variation of this quasi-nefarious theme: (1) she conferred a benefit to AFI; (2) AFI voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for AFI to retain the benefit without paying the value thereof. *Fla. Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n.4 (Fla. 2004) (quoting *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So.2d 205, 207 (Fla. 2nd DCA 1995)).

To represent the proposed class in this action, the Plaintiff must establish the class she proposes is adequately defined and clearly ascertainable. *Carriuolo*, 823 F.3d at 984. This requirement is implicit in the rule – some objective criteria allows identification of class members in an administratively feasible way. *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014). In other words, a "management process that does not require much, if any,

4

individual inquiry." *Id*. If The Plaintiff passes this hurdle, she then must satisfy each of Rule 23(a)'s prerequisites (numerosity, commonality, typicality, and adequacy of representation) and at least one of Rule 23(b)'s requirements. Here she points to Rule 23(b)(3): the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. And she must "affirmatively meet" all rule 23's demands while contending with the overarching perspective given to class action litigation – it is the exception to the customary expectation that the named parties are the masters of their lawsuits. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Put bluntly, the Plaintiff's burden here is one of *proof* as opposed to one of pleading. *Brown v. Electrolux Home Prod., Inc.,* 817 F.3 1225, 1234 (11th Cir. 2016) (emphasis in original). The Court's analysis for all this is "rigorous" and may even require looking into the merits of her underlying claim if that look is relevant to see if she meets Rule 23's prerequisites. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 56 U.S. 455, 465-466 (2013).[3]

    *1. ascertainability*

The Plaintiff posits that ascertaining the members of the proposed class is administratively feasible since her class definition is objective on its face, requiring only that members have purchased DuraBlend® in Florida within the prescribed period. She describes a "notice plan that will identify the class members and give them notice." (Doc. 35, p.14) Her plan is to use the names and addresses of all retailers in Florida that sold DuraBlend® during the class period (obtained in

---

[3] The district court's decision granting or denying a motion seeking class certification under Rule 23 is reviewed for abuse of discretion. *Hines v. Widnall,* 334 F.3d 1253, 1255 (11th Cir. 2003).

discovery) and to subpoena retailers' records to identify class members. For corporate store sales (20% of AFI's sales including the sale to the Plaintiff), the Plaintiff plans to request sales records directly from AFI. (Doc. 65, pp. 17-18) But AFI questions the Plaintiff's ability to establish ascertainability and maintains that the Plaintiff's proposed method is not "administratively feasible" as this circuit requires. *See Karhu v. Vital Pharm., Inc.,* 621 F. App'x. 945, 947-48 (11th Cir. 2015) ("a plaintiff cannot establish ascertainability simply by asserting that class members can be identified using defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible"). AFI asserts that 70% of the HomeStores report their sales to AFI, however those stores only make up 30% of the total licensee revenue. Doc. 48 (Straus Decl*.),* ex. J (Lebensburger depo.) at 82:13-83-20. And, except for the corporate owned licensees (which make up less than 20% of sales in Florida), AFI does not have unfettered access to licensees' sales information. *Id.* at ex. K (Blemaster depo.) at 38:1-10. Even for the sales it can access, the retrievable data is limited to a customer identification number (not a name, address or phone number) and "rolled up transactional data" for each customer (as opposed to specific product data). *Id.* at 38:1-10; 85:6-18. And, AFI only keeps data for eighteen to twenty-four months due to data storage issues. Thus, according to AFI, records available are limited:

• No putative class members that purchased from the primary dealers (making up 40% of AFI's sales) or other non-licensee retailers (making up another 25% of AFI's sales) can be identified;

• No putative class members that purchased from licensees from December 2011 (the beginning of the class period), through December 2014 (two years before the action was filed), can be identified (representing 54% of AFI's sales to wholesalers); and

• Only 30% of the customers who purchased after December 2013 (two years before

the action was filed) potentially can be identified.

Doc. 74 at p.12 (citing Straus Decl. ex. J (Lebensburger depo.), ex. K (Blemaster depo.), ex. O (Sales by Wholesaler), ex. P (Hook 30(b)(6) depo.), ex. Q (income statement for DuraBlend®)). Thus, according to AFI, the Plaintiff is only guessing that the retailers have the necessary information and will voluntarily provide it (AFI questions the privacy implications related to producing customer names and addresses). In reality, AFI says that ascertaining the class is not administratively feasible.

In addition to administrative feasibility problems, determining class membership here will require individual inquiries. The proposed class includes putative class members who have no valid FUDTPA or unjust enrichment claims against AFI. *Alhassid v. Bank of Am., N.A.*, 307 F.R.D 684, 695-96 (11th Cir. 2015) (finding class membership would devolve into individually assessing each loan account to determine whether any impermissible conduct occurred). Reiterating this circuit's threshold requirement, "the identification of class member should be a manageable process that does not require much, if any, individual inquiries." *Id.* (citing *Bussey,* 562 F. App'x. at 787. In *Alhassid*, the Eleventh Circuit court found that due to the way the defendant stored its data, there was no administratively feasible way to determine membership in any of the plaintiffs' proposed classes. Noting that the defendant's data system could not determine on an automated basis without individualized inquiry, the court concluded that plaintiffs had failed to meet their burden of demonstrating that their proposed classes were clearly ascertainable. *Id.* at 695-96.

The Plaintiff analogizes this case to two others: *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011) and *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689 (S.D. Fla. 2010), but I find these cases are not analogous. Both *Fitzpatrick* and *Nelson* concerned a single product and defendants' advertisements and messages that conveyed consistent messages to every consumer.

*See Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011) (affirming district court's decision to grant class certification on FDUTPA claim based on allegations that defendant falsely claims its yogurt aided in promoting digestive health in ways other yogurts did not); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689 (S.D. Fla. 2010) (granting class certification on FDUTPA claim where plaintiff alleged defendant falsely claimed baby formula was only baby formula that contained two nutrients essential to brain and eye development). In contrast, the DuraBlend® at issue in this case involves thousands of pieces and styles of furniture with various hangtags, oral statements by a vast number of salespersons, and the evidence before me fails to demonstrate a systematic or uniform marketing scheme. And, examining the merits of each potential class member's claim is needed to determine whether each is the victim of "a deceptive act or unfair trade practice." *See e.g. In re Sears, Roebuck & Co. Tools Mktg. and Sales Practices Litig.*, 2012 WL 1015806 (N.D.Ill. 2015) (differentiating *Fitzpatrick* and *Nelson,* declining to certify class of buyers of thousands of different Craftsman tools because evidence failed to show Sears used a systematic, uniform and pervasive marketing scheme for Craftsman tools and individualized questions of causation would predominate despite FDUTPA's lack of reliance requirement).

In *Walewski v. Zenimax Media, Inc.*, 502 F. App'x. 857, 862 (11th Cir. 2012), the Eleventh Circuit affirmed the district court's decision that the class was not adequately defined or clearly ascertainable, finding the class definition "unworkable in terms of identifying class members" and that it "impermissibly included members who had no cause of action as a matter of law." Similarly, in *Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*, case no. 15-24375-CIV-Altonaga, 2016 WL 8542540, *5-6 (S.D. Fla. Dec. 1, 2016), the district court denied class certification for the plaintiff's FDUTPA claim because the proposed class was overbroad as it included members who

may not have FDUTPA claims. The court explained that the proposed class included members, unlike the plaintiff, who: 1) understood the fees were not related to the defendant's actual costs, or 2) a reasonable customer in same circumstances as some of the class members would not have found the fees deceptive.[4] As in *Deere*, and *Walewski*, the Plaintiff here has not satisfied the ascertainability element.

*2. Rule 23(a) requirements*

Even assuming *arguendo* that the Plaintiff can establish ascertainability, she has failed to satisfy Rule23(a)'s prerequisites, particularly the commonality and typicality requirements, which overlap. Both focus on whether a sufficient nexus exists between the legal claims of the named class representative and those of individual class members to warrant certification. *Prado- Steinman v. Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000). The commonality requirement of Rule 23(a)(2) requires "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). While the commonality requirement is a "low hurdle" with only a "light" burden, as it "does not require that all questions of law and fact raised be common," it "requires proof the court can resolve the questions of law or fact in 'one stroke.'" *Alhassid,* 307 F.R.D. at 696 (quoting *Williams,* 568 F.3d at 1356; *Randolph v. J.M Smucker Co.*, 303

---

[4] While proof of actual reliance is unnecessary, the first element of a FDUTPA claims is only satisfied by evaluating a reasonable consumer in the same circumstances as the plaintiff. In *Deere, supra*, the district court noted that courts in the Eleventh Circuit and in Florida have denied class certification where the proposed class members have been exposed to different information. In denying class certification the *Deere* court noted that the record showed variability in how customers interacted with defendant's sales representatives, what written or oral communications they received, and held that "the mere possibility some customers in certain situations and in possession of certain information could have reasonably understood Defendant's fees were not related to its actual costs undercuts the Plaintiff's theory from a class-certification perspective." *Deere*, 2016 WL 8542540, at *3.

F.R.D. 679, 693 (S.D. Fla. 2014)). Traditionally, commonality turns on the group characteristics of the class as a whole. *Spinelli v. Capital One Bank*, case no. 8:08-cv-132-T-33EAJ, 2009 WL 700705, *7 (M.D. Fla. March 14, 2009) (citing *Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). Typicality, in contrast, concerns the individual characteristics of the class members in relation to the class. *Prado- Steinman,* 221 F.3d at 1278-79.

### a) Rule 23(a)(3) Typicality

It is not enough that a named plaintiff can establish a case or controversy between herself and the defendant. Rather, each claim must be analyzed and cannot be asserted on behalf of the class unless at least one named plaintiff has suffered the injury that gives rise to the claim. And, if proof of the representative's claim would not necessarily prove all of the proposed class members' claims, the representative's claim are not typical of the proposed class's claims. *Alhassid,* 307 F.R.D. at 698 (citation omitted). Here, the Plaintiff has presented evidence that her FDUPTA claim is anything but typical. She testified that the particular salesperson she worked with in Pinellas Park, Florida told her the furniture she was purchasing was "pleather and it was a mix of leather and with some synthetic material for covering." *See* doc. 33-1 at p.32. She understood that the furniture she purchased was not leather and that she paid less than she would have paid for leather. The evidence before me shows that neither AFI nor the salesperson made any representations to the Plaintiff about the durability, characteristics or qualities of DuraBlend®. The Plaintiff and her family of six, including two young children and five cats, use the furniture daily, and the furniture sits under a window in the Florida sun (doc. 40-2, Ex. E at pp. 16, 63, 85-86). Moreover, the Plaintiff was not exposed to AFI's hangtags, its marketing, or labels which she alleges are deceptive. And, the evidence shows the statements she relied on are not typical of the statements or information relied

upon by others in the proposed class. Comparing the Plaintiff's experience and knowledge to the class members' declarations shows that the Plaintiff lacks typicality. Because the Plaintiff's claim is atypical of the class, she is subject to defenses that may not apply to the others. *Alhassid,* 307 F.R.D. at 698. *See also Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 683 (S.D. Fla. 2008) (finding plaintiffs not typical because representations made to them may have been different from representations made to other class members); *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 480 (S.D. Fla. 2006) (finding plaintiff atypical because class members exposed to different representations and varied disclaimers).

    *b) Rule 23(a)(2) Commonality*

When a defendant engages in a standardized course of conduct that affects all class members, the commonality element is generally satisfied. *Alhassid,* 307 F.R.D. at 697. To this end, the Plaintiff alleges in her complaint that AFI "falsely, deceptively or misleadingly promoted, marketed, advertised and sold furniture with DuraBlend® to the Plaintiff and Class members as a high-quality, durable leather product." Doc. 1, ¶2. And she posits that the commonality element is satisfied because AFI's representations via hangtags, print ads, and spoken word about its products being "durable" would "deceive an objectively reasonable observer" when in fact the products are measurably less durable than leather. Doc. 35 at pp.16-17. However, the evidence shows that each proposed class member's sales experience was unique. The proposed class members purchased various DuraBlend® products adorned with a variety of hangtags and decking labels, and the members were exposed to a variety of oral statements about DuraBlend® by a vast number of salespersons.

AFI notes variations regarding the "durability" of the proposed class members' furniture,

dependent on individual factors such as the placement of the furniture (the Plaintiff's is near a window in Florida) and the use of the furniture (the Plaintiff testified she allows her five cats on her furniture and they scratch it). Other putative class members, but not the Plaintiff, saw the DuraBlend® hangtags and/or the labels sewn onto or attached to the furniture that disclose the contents of DuraBlend®. And some putative class members, but not the Plaintiff, saw DuraBlend® advertising and marketing and/or visited the AFI website which described the contents of DuraBlend®. The Plaintiff submitted declarations from five putative class members and each declaration explains the representations made by a particular sales associate about DuraBlend®. Each putative class member's experience is unique. *See* doc. 33-32 (Declaration of Louis Jeannette), 33-33 (Mary Kay Welty Decl.), 33-34 (Deborah Olivieri Decl.), 33-35 (Dustin Armstrong Decl.), and 33-36 (Randy McManaway Decl.). Accordingly, I find that the rights of the proposed class members arising out of fraudulent representations which vary widely between purchasers are hardly suitable for class treatment.[5]

### 3. Rule 23(b)(3) Predominance

Of course, in addition to satisfying the four requirements of Rule 23(a), the Plaintiff must also meet one of the alternative requirements set forth in Rule 23(b). This she cannot do either. She elected subsection (3) which requires findings both 1) "that the questions of law or fact common to

---

[5] The Plaintiff cites to *Friedman v. Dollar Thrifty Auto. Grp., Inc.,* 304 F.R.D. 601, 612 (D. Colo. 2015), a case where plaintiff alleged the defendants violated the FDUTPA by tricking consumers to purchase add-on products including loss damage waivers, supplemental liability insurance, and roadside assistance. In *Friedman,* as in the case before me, the sales practices were not uniform to all class members and, due to the individualized factual and legal inquiries required as to the proposed class, there would be significant difficulties in the management of a class action. The *Friedman* court concluded that a class action was not the superior method for adjudicating the claims presented.

class members predominate over any questions affecting only individual members," and 2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).[6] Unfortunately, her failure to establish predominance mirrors her failure to establish commonality. Like commonality, "[t]he predominance inquiry focuses on 'the legal or factual questions that qualify each class member's case as a genuine controversy,' [but it] 'is far more demanding' than Rule 23(a)'s commonality requirement." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)). The Court's inquiry is typically focused on whether there are common liability issues which may be resolved on a class-wide basis, and the Court must consider the cause of action and "what value the resolution of the class-wide issue will have in each member's underlying cause of action." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000).

    a) FDUTPA Claim

In deciding whether individual issues predominate over common issues as to the Plaintiff's FDUTPA claim, I must consider each element of the claim. First, the Plaintiff must establish a deceptive act or unfair practice. As already noted, differences exist in the circumstances under which

---

[6] Rule 23(b)(3) sets forth four considerations pertinent to these findings:
(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing the class action.
*Id.*

the putative class members purchased DuraBlend® furniture creating many individualized factual and legal issues with respect to the FDUTPA claim. AFI asserts that the Plaintiff cannot show class-wide evidence of a deceptive act since she cannot prove the existence of a uniform deception. In some situations, courts in this circuit have found that FDUTPA claims can be resolved on a classwide basis. For instance, one court found the plaintiffs' FDUTPA claim amenable to class certification where all class members participated in the defendant's tenant insurance program with the same knowledge and based on the same representations. *Bowe v. Public Storage,* 318 F.R.D. 160 (S. D. Fla. 2015). In reaching this conclusion, the *Bowe* court acknowledged that individualized inquiries were required to determine causation under FDUTPA in situations where different representations were made to different class members and where some class members were aware of the defendant's deceptive conduct. *Id.* at 182 (citing *Randolph,* 303 F.R.D. at 695-96)) ("The matter is further complicated by the fact that the majority of Defendant's products did not bear the challenged labeling and that the class includes products which did not contain the alleged misrepresentation during the entire class period."); *Pop's Pancakes,* 251 F.R.D. at 685 (finding where some class members were aware of additional fees included in invoices, predominance could not be established); *Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846, 856 (Fla. 3d DCA 2012) (plaintiff had not set forth evidence that each class member received the same misrepresentation). Such is the situation here.

The Plaintiff posits that AFI's marketing efforts established an ongoing and deceptive practice of marketing DuraBlend® as a product deliberately designed to look like leather by using the words "leather" and "durable" and other phrases associated with leather. According to the Plaintiff, AFI communicated to the proposed class members through words and imagery through

hangtags, labels, ads and commercials, and carefully drafted "training" materials distributed through its retail network. Doc. 74, p.2. And the Plaintiff endeavors to convince the Court that AFI's array of communications amounts to a common marketing scheme. Upon consideration, however, I find the Plaintiff's attempt to establish a singular common message that AFI communicated to consumers as part of an overall marketing campaign designed to present DuraBlend® as leather falls short. *Contra Bowe,* 318 F.R.D at 182 (finding common issues predominated in FDUTPA claim where the class members all participated in the defendant's tenant insurance program with the same knowledge and based on the same representations such that determining whether the defendant's allegedly deceptive acts caused class members' injuries could be based on classwide proof). Instead, it seems that individualized inquiries will be needed in light of the varying representations or varying knowledge of the proposed class members.

The Plaintiff is similarly unable to establish causation, which is also necessary for a FDUTPA claim. While FDUTPA does not require individualized proof of subjective reliance, some nexus between the deceptive act and damages must exist. *Justice v. Rheem Mfg. Co.*, 318 F.R.D. 687, 696-97 (S.D. Fla. 2016); *Bowe,* 318 F.R.D at 182. She has presented her own testimony as well as declarations from five potential class members. Each declarant had a unique sales experience and exposure to varying allegations regarding DuraBlend® and its durability. The Plaintiff herself did not review AFI's website or read either the hangtag or label prior to deciding to purchase the DuraBlend® furniture.

Finally, in order to establish her FDUTPA claim, the Plaintiff must satisfy the third element, damages. She must demonstrate that all class members have suffered injury and "that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432-33

(2013). Relying on testimony from two experts, she presents a method of determining damages by quantifying the difference in strength and durability between leather and DuraBlend®. Doc. 35, pp. 19-20. The Plaintiff's proposed methodology measures the difference between the product as represented and the product actually delivered, resulting in a "standardized class wide damages figure." AFI seeks to strike the Plaintiff's experts, asserting the experts' opinions fail *Daubert*'s standard of reliability because they draw overreaching conclusions unsupported by data and because their testimony will not assist the trier of fact through application of scientific, technical, or specialized expertise to understand the evidence or to determine a fact in issue. The Plaintiff reiterates her theory of liability: that class members were misled to believe the furniture they bought consisted of leather and had the durability of leather. She posits that DuraBlend® is less durable. As proof, she says her experts' testimony will show the diminished value and the calculation of measuring damages is the market value of the good as represented (the purchase price) minus the market value of the good delivered (doc. 80, p.9).

Upon consideration, in light of my finding that the Plaintiff is unable to establish predominance with regard to the first two elements of her FDIUTPA claim, at this juncture the Court need not utilize scarce judicial resources to determine whether the experts' methodologies satisfy the requirements of Rule 702 and *Daubert*. *See Britt Green Trucking, Inc. v. FedEx Nat'l. LTL, Inc.*, case no. 8:09-cv-445-T-33TBM, 2014 WL 2861485, *9 (M.D. Fla. June 24, 2014) (court would not utilize scarce judicial resources in determining whether expert's methodologies satisfied requirements of Rule 702 and Daubert); *Karhu, supra* (denying motion to strike experts as moot because the expert materials subject to motion to strike did not impact the court's conclusions with

16

regard to propriety of class certification).[7]

### b) Unjust enrichment

Lastly, I also find that the Plaintiff is unable to satisfy Rule 23(b)(3) with regard to her unjust enrichment claim too. The Eleventh Circuit has noted that "common questions will rarely, if ever, predominate" in an unjust enrichment claim." *Webber v. Esquire Deposition Serv., LLC*, 439 F. App'x. 849, 851 (11th Cir. 2011) (quoting *Vega v. T-Mobile, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009)). AFI asserts that the Plaintiff has failed to explain why her unjust enrichment claim should be certified, and points to factual issues that would require an individualized inquiry. Unlike other cases in this circuit where the defendants acted in the same manner toward every class member, here the Plaintiff acknowledges that the proposed class members purchased DuraBlend® furniture from many different sellers, and her own claims are based largely on alleged communications by a particular sales associate. Doc. 33-1 at pp. 29-32. *See Bowe,* 318 F.R.D. at 184 (citing *Muzuco v. Re$ubmitt, LLC*, 297 F.R.D. 504, 521 (S.D. Fla 2013) ("Defendants' business operations are the same to all members of the putative class."); *In re Acct. Overdraft Litig.*, 286 F.R.D 645, 656 (S.D. Fla. 2012) ("Any analysis of this scheme will depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner.")). In *Bowe*, the plaintiffs' unjust enrichment claim involved standardized insurance presentation, form agreements, and identical certificates of insurance, and the district court found that they had shown common evidence predominated over individualized inquiries. *Bowe*, 318 F.R.D. at 184. Here, determining whether each member was unjustly enriched will depend upon unique facts, rather than

---

[7] At the request of counsel, the district judge recently extended the deadline for filing dispositive motions/ *Daubert* motions and the new deadline is August 10, 2018. *See* Order, doc. 96.

common questions that predominate.

Because I find that questions of law or fact common to class members do not predominate over any questions affecting only individual members as to the Plaintiff's FDUTPA and unjust enrichment claims, a class action is clearly not superior to other available methods for fairly and efficiently adjudicating the controversy.

*D. Conclusion*

For the reasons set forth herein, it is hereby

RECOMMENDED:

1. The Plaintiff's motion to certify class (doc. 35) be DENIED.

IT IS SO REPORTED in chambers at Tampa, Florida on June 27, 2018.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.